UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TAMMY SALING,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>KEITH ROYAL, Sheriff of Nevada County, California; GAYLE SATCHWELL, Former Director of Human Resources, Nevada County,<br><br>　　　　　Defendants. | No. 2:13-cv-1039-TLN-EFB PS<br><br>FINDINGS AND RECOMMENDATIONS |

　　　This matter was before the court on October 8, 2014 for hearing on defendants' motion to dismiss plaintiff's first amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim.[1] ECF No. 40. Attorney Sheri Chapman appeared on behalf of defendants; plaintiff appeared pro se. For the reasons stated below, it is recommended that defendants' motion be granted in part and denied in part.

I.　　Background

　　　Plaintiff asserts a variety of state and federal claims against defendants Keith Royal, Sheriff of Nevada County, and Gayle Satchwell, the former director of Human Resources for the

---

[1] This case, in which plaintiff is proceeding pro se, is before the undersigned pursuant to Eastern District of California Local Rule 302(c)(21). *See* 28 U.S.C. § 636(b)(1).

1

County of Nevada arising out of her termination from employment with the Nevada County Sheriff's Department. ECF No. 39. Plaintiff claims in her first amended complaint that on March 16, 2011, while on duty and without warning, she was told to go to Human Resources. Am. Compl., ECF No. 39 ¶ 5. When she complied, defendants' representative, Susan Schoenig, who was acting as a "mouthpiece" for defendants, ordered plaintiff to participate as a witness to an ongoing investigation concerning another individual. *Id*. ¶¶ 4, 5. However, after signing an admonishment stating that she must answer questions truthfully, plaintiff was then interrogated about an off-duty personal relationship. *Id*. ¶ 5, Ex. A1. Later, on April 1, 2011, plaintiff was again instructed to go to Human Resources, where she was again questioned about her off-duty relationship. *Id*. ¶ 6.

On April 26, 2011, plaintiff was notified that she was now the subject of an internal investigation and was placed on administrative leave pending the outcome. *Id*. ¶ 7. She was interviewed a third time about her personal relationship on May 18, 2011. *Id*. ¶ 11. Plaintiff subsequently received a notice of proposed disciplinary action, recommending plaintiff's employment be terminated. *Id*. ¶ 13, Ex. I. The notice stated that plaintiff was entitled to a hearing regarding the proposed action, which was scheduled for June 23, 2011. *Id*.

Plaintiff retained counsel and attempted to have her hearing continued to allow counsel an opportunity to review relevant documents. *Id*. ¶¶ 15, 16. Ultimately, plaintiff's request to reschedule the hearing to a date that permitted her attorney's preparation and participation was refused, and on June 28, 2011, plaintiff received notice of a final decision to terminate her employment effective July 6, 2011. *Id*. at 5-8.

On July 5, 2011, plaintiff's counsel received a fax at approximately 4:55 p.m., stating that defendants could meet to discuss the matter at 11:00 a.m. the next day. *Id*. ¶ 26. Plaintiff and her attorney met with defendants on that day (July 6), but the decision to end her employment was not changed. *Id*. ¶¶ 28-30.

/////
/////
/////

II. Defendants' Motion to Dismiss

    A. Rule 12(b)(6) Standards

To survive dismissal for failure to state a claim pursuant to Rule 12(b)(6), a complaint must contain more than a "formulaic recitation of the elements of a cause of action"; it must contain factual allegations sufficient to "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "The pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action." *Id.* (quoting 5 C. Wright & A. Miller, *Federal Practice and Procedure* § 1216, pp. 235-236 (3d ed. 2004)). "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Dismissal is appropriate based either on the lack of cognizable legal theories or the lack of pleading sufficient facts to support cognizable legal theories. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

In considering a motion to dismiss, the court must accept as true the allegations of the complaint in question, *Hospital Bldg. Co. v. Rex Hosp. Trs.*, 425 U.S. 738, 740 (1976), construe the pleading in the light most favorable to the party opposing the motion, and resolve all doubts in the pleader's favor. *Jenkins v. McKeithen*, 395 U.S. 411, 421, *reh'g denied*, 396 U.S. 869 (1969).

Pro se pleadings are held to a less stringent standard than those drafted by lawyers. *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972). Unless it is clear that no amendment can cure its defects, a pro se litigant is entitled to notice and an opportunity to amend the complaint before dismissal. *Lopez v. Smith*, 203 F.3d 1122, 1127-28 (9th Cir. 2000); *Noll v. Carlson*, 809 F.2d 1446, 1448 (9th Cir. 1987). Nonetheless, although the court must construe the pleadings of a pro se litigant liberally, *Bretz v. Kelman*, 773 F.2d 1026, 1027 n. 1 (9th Cir. 1985), that liberal interpretation may not supply essential elements of a claim that are not plead. *Pena v. Gardner*, 976 F.2d 469, 471 (9th Cir. 1992); *Ivey v. Bd. of Regents of Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982). Furthermore, "[t]he court is not required to accept legal conclusions cast in the

form of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged." *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754-55 (9th Cir. 1994). Neither need the court accept unreasonable inferences, or unwarranted deductions of fact. *W. Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981).

In deciding a Rule 12(b)(6) motion to dismiss, the court may consider facts established by exhibits attached to the complaint. *Durning v. First Boston Corp.*, 815 F.2d 1265, 1267 (9th Cir.1987). The court may also consider facts which may be judicially noticed, *Mullis v. U.S. Bankr. Ct.*, 828 F.2d at 1338, and matters of public record, including pleadings, orders, and other papers filed with the court. *Mack v. South Bay Beer Distribs.*, 798 F.2d 1279, 1282 (9th Cir.1986).

B. Discussion

The amended complaint purports to assert seven claims for relief: (1)"Intrusion into Seclusion (Privacy) Under Equal Protection;" (2) "Violated Procedural Due Process By Deprivation of Inalienable Rights;" (3) "Retaliation Termination;" (4) "Harassment in Violation of Title VII (42 U.S.C. ss 2000e-2);" (5) "Preventing Subsequent Employment by Misrepresentation;" (6) intentional infliction of emotional distress; and (7) "Civil Conspiracy." ECF No. 39 at 12-20.

1. Intrusion into Seclusion (Privacy) Under Equal Protection

Plaintiff's first claim, entitled "Intrusion into Seclusion (Privacy) Under Equal Protection," references the Equal Protection Clause and cites to the Fourth and Fourteenth Amendments to the United States Constitution, as well as to Article I of the California Constitution. ECF No. 39 at 12, 29-34. While the specific claim or claims she is asserting is not entirely clear, the thrust of her allegations are that defendants violated her right to privacy. *Id*. at 12-13.

Defendants argue that to the extent plaintiff is asserting a claim under 42 U.S.C. § 1983 that some federally protected privacy right was violated, that claim is barred by the applicable statute of limitations. ECF No. 41 at 7. Section 1983 contains no specific statute of limitations. For that reason, federal courts apply the forum state's statute of limitations, along with the forum

4

state's law regarding tolling. *See Wilson v. Garcia*, 471 U.S. 261 (1985); *Jones v, Blanas*, 393 F.3d 918, 927 (9th Cir. 2004); *Fink v. Shedler*, 192 F.3d 911, 914 (9th Cir. 1999).  Under California law, the statute of limitations for a claim of tortious invasion of privacy is two years. *See* Cal. Civ. Proc. Code § 335.1; *Cain v. State Farm Mut. Auto. Ins. Co.*, 62 Cal. App. 3d 310, 313 (1st Dist. 1976) (providing that section 335.1, formally codified as section 340, contains the statute of limitations for tortious invasion of privacy).  Thus, plaintiff had two years from the accrual of any section 1983 claim to file a civil action.

Defendants argue that plaintiff alleges her privacy rights were violated when she was interviewed on three separate occasions, with the last interview being conducted on May 18, 2011.  This action was initiated on May 24, 2013, more than two years after that interview. Therefore, defendants conclude, any privacy cause of action based on section 1983 is barred by the applicable two year statute of limitations. *Id*. at 7-8.  The argument inaccurately characterizes the allegations in the complaint.

Contrary to defendants' assertions, plaintiff's invasion of privacy claim does not rest solely on her allegations that she was wrongfully coerced into disclosing private information during three interviews.  Rather, the claim is premised largely on an alleged improper disclosure(s) to third parties of the private information elicited from her during the interrogations. The disclosure(s) allegedly occurred at some point in time between May 18, 2011 and June 7, 2011, after the interviews were completed.

Plaintiff alleges that she was interviewed on March 16, April 1, and May 18, 2011.  ECF No. 39 ¶¶ 5, 6, 1.  During these interviews she was forced to answer questions regarding a sexual relationship she had with the department's Undersheriff. *Id*. at 77-78, 81-84, 97-102.  She was admonished that if she did not truthfully answer questions about this relationship she could lose her job.  She further alleges, however, that on June 7, 2011, Lieutenant Pettitt, the individual who conducted the May 18, 2011 interview, prepared a summary of his investigation for the defendants. *Id*. ¶ 12.  According to plaintiff, that summary indicates that Pettitt improperly shared the contents of the interviews with third parties, including current county employees and at least one retired employee. *Id*; *see* ECF No. 39 Ex. H.

Thus, plaintiff claims that the disclosures of her private information to third-parties occurred at a precise time(s) still unknown to her but no earlier than May 18, 2011 and not later than June 7, 2011. As this action was filed on May 24, 2013, any disclosures by Lieutenant Pettitt occurring on or after May 24, 2011, would not be time-barred. Accordingly, it cannot be determined from the face of the complaint that a section 1983 claim predicated on these facts is time-barred.

Although the first cause of action is not, on its face, untimely, the claim must nevertheless be amended. As explained above, it cannot be discerned from the complaint the precise claim plaintiff intends to allege in the first cause of action. The crux of the allegations seems to indicate a claim under section 1983 for a deprivation of a federally protected right predicated on the privacy violation. However, plaintiff also makes reference to the Equal Protection Clause, the Fourth and Fourteenth Amendments, and the California Constitution. While plaintiff's claims under the California Constitution are barred for other reasons addressed below, her references to the state constitution and the Equal Protection Clause in the first cause of action leaves defendants and the court guessing as to the precise claim plaintiff is intending to assert in that cause of action. Accordingly, the first cause of action must be dismissed. However, plaintiff will be given leave to amend to allow her an opportunity to clarify the claim she intends to assert and to provide allegations that support the requisite elements for the claim. If plaintiff amends this claim her amended complaint shall separate each distinct claim into separate causes of action. Specifically, if plaintiff asserts claims under section 1983, her amended complaint shall specify what federally protected right was violated by which defendant(s), and separate each violation into separate causes of action.

2. Procedural Due Process by Deprivation of Inalienable Right

Plaintiff's second cause of action is entitled "Procedural Due Process by Deprivation of Inalienable Rights." This appears to be a section 1983 claim alleging a deprivation of procedural due process in the termination of her employment. ECF No. 39 at 13-14, 34-38.

The procedural due process component of the Fourteenth Amendment protects individuals against the deprivation of liberty or property by the government without due process. *Portman v.*

1  *County of Santa Clara*, 995 F.2d 898, 904 (9th Cir. 1993).  At a minimum, due process requires
2  that the government provide "notice reasonably calculated, under all the circumstances, to apprise
3  interested parties of the pendency of the action and afford them an opportunity to present their
4  objections."  *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).  The
5  opportunity to be heard must be provided at a "meaningful time and in a meaningful manner."
6  *Logan v. Zummerman Brush Co.*, 455 U.S. 527, 540 (1981), *overruled in part by Daniels v.*
7  *Williams*, 474 U.S. 327 (1986).  However, "due process is flexible and calls for such procedural
8  protections as the particular situation demands."  *Id*.  A cognizable § 1983 claim based on
9  procedural due process "has three elements: (1) a liberty or property interest protected by the
10 Constitution, (2) a deprivation of the interest by the government, and (3) lack of process."
11 *Portman County of Santa Clara*, 995 F.2d 898, 904 (9th Cir. 1993).
12      Defendants do not dispute that plaintiff had a property interest in continuing her
13 employment, nor do they contest that plaintiff was deprived of that interest.[2]  Instead, defendants
14 argue that plaintiff's complaint demonstrates that she received all the process that she was due.
15 ECF No. 41 at 9.
16      On June 20, 2011, plaintiff was given a Notice of Proposed Disciplinary Action—
17 Dismissal, which explained that a proposal had been made to terminate her employment because
18 she lied during the March 16, 2011, and April 1, 2011 interviews.  ECF No. 39 at 127- 131 (Ex.
19 I).  Thus, plaintiff did receive prior notice of the proposed decision to terminate her employment.
20      However, due process requires more than mere notice.  Plaintiff asserts that she was
21 denied a reasonable opportunity to be heard.  Pl.'s Opp'n, ECF No. 45-1 at 4.  The Notice of
22 Proposed Disciplinary Action provided that a Skelly[3] hearing regarding the proposed action had

---

[2]  "A government employee has a constitutionally protected property interest in continued employment when the employee has a legitimate claim of entitlement to the job.  *Board of Regents v. Roth*, 408 U.S. 564, 577 (1972); *Portman v. County of Santa Clara,* 995 F.2d 898, 90 4 (9th Cir. 1993).  There is no dispute here that under California law plaintiff had such an interest.

[3]  A Skelly hearing refers to a hearing under *Skelly v. State Personnel Board*, 15 Cal. 3.d 194 (1975), that allows a public employee to respond to allegations prior to the imposition of a disciplinary decision.

been scheduled with Susan Kedera, legal counsel for the Nevada County Sheriff's Department, on June 23, 2011. ECF No. 39 at 131 (Ex. I); *see id.* ¶ 20. On June 22, plaintiff faxed a letter to Ms. Kedera requesting that the hearing be rescheduled for the end of the following week "in order for [plaintiff] to have fair and reasonable time to organize the volume of information needed" for the hearing. *Id.* at 135 (Ex. J1). The request was denied in part, and instead the hearing was rescheduled to the following Monday, June 27, 2011. *Id.* at 144 (Ex. J3).

On June 24, 2011, plaintiff sent defendant Royal a letter informing him that she had retained legal counsel. *Id.* at 140 (Ex. J2). She also explained that her attorney was out of town until July 3, 2011, and would need an opportunity to review relevant documents. She stated that her attorney would subsequently make a request to have a Skelly hearing around July 15. *Id.* at 140 (Ex. J2). While this request appears facially reasonable, it was summarily denied later that day. Instead of accommodating her attorney's need for time to prepare (and to return from travelling), defendant Royal issued plaintiff a letter stating that pursuant to the Department's Miscellaneous Memorandum of Understanding ("MOU") plaintiff only had five days from the date of the proposed action to be heard on the matter, and therefore her request to continue the hearing was denied. Royal further stated that should plaintiff fail to appear at the June 27 hearing or decline to respond in writing he would make a decision based on the facts set forth in the Notice of Proposed Disciplinary Action. *Id.* at 144 (Ex. J3).

On June 26, 2011, plaintiff faxed a letter to Ms. Kedera stating that she would not be able to attend the scheduled hearing because her attorney would be out of town on the date the hearing was scheduled. *Id.* at 146 (Ex. J4). She again requested that the hearing be continued to a later date to allow her attorney to review relevant documents. *Id.* On the morning of the hearing, plaintiff received a letter from Ms. Kedera, again denying her request to continue the hearing and stating that plaintiff's hearing had been canceled based on her representation that she would not be attending. *Id.* at 148 (Ex. J5). Specifically, Ms. Kedera stated that the "Sheriff is not agreeing to waive the Skelly hearing process timeline as outlined in the Memorandum of Understanding (MOU): The MOU provides for a five (5) day timeline in which the Skelly hearing is to be held

/////

1   as was communicated to you in your Notice of Proposed Disciplinary action and which you
2   acknowledged when we rescheduled the original date from last Thursday to today at 3pm."
3         Plaintiff alleges that on June 28, 2011, she received three text messages from Captain
4   Salivar that stated, "Tammy, you are directed to appear at HR at 3:00 pm today.  If you fail to
5   appear to receive paperwork you will be considered absent without leave-awol.  Thanks."  *Id*.
6   ¶ 24.  Plaintiff arrived at Human Resources at 3:00 p.m. and was handed a "Final Order of
7   Disciplinary Action-Dismissal," along with a box containing her personal belongings.  *Id*. ¶ 25.
8   The final order, which was signed by Royal, stated that plaintiff's dismissal from her position was
9   effective July 6, 2011.  *Id*. at 152 (Ex. K).  The order further stated that there were no mitigating
10  circumstances justifying a lower level of discipline, and that plaintiff had "been demanding,
11  belligerent and insubordinate with [Royal] with regard to the scheduling of a Skelly hearing."  *Id*.
12  at 153.
13        Plaintiff claims that on July 5, 2011, her attorney received a fax at approximately 4:55
14  p.m., stating that defendants could meet to discuss the matter at 11:00 a.m. on July 6, 2011.  *Id*.
15  ¶ 26.  A meeting was held at that time and lasted approximately forty-five minutes.  *Id*. ¶ 28.
16  Plaintiff cannot recall if her attorney formally objected to insufficient time permitted to review
17  the case but she does recall that he made a statement about the lack of time he was allowed to
18  prepare, and he inquired why plaintiff was "being railroaded out the door."  *Id*.  On July 7, 2011,
19  plaintiff's attorney called plaintiff to inform her that that Royal's decision to dismiss her was final
20  and effective July 6, 2011 at 5:00 p.m.  *Id*. ¶ 30.
21        Plaintiff contends that defendants' conduct violated her right to due process.  *Id*. at 13-14.
22  She claims that defendants "refused to listen to the 'Totality of Circumstances' and rushed the
23  process by force and 'going through the motions.'"  *Id*. at 14.  As noted, the extent and formality
24  of process that is due is flexible and the procedural protections required depend upon the
25  particular situation.  It remains to be seen whether the defendants might later present evidence,
26  extrinsic to the allegations of the complaint, to show that there was some exigency that would not
27  reasonably have allowed for accommodating plaintiff's counsel's need for time to return from
28  travel and review documents and adequately prepare for an employment termination hearing.  But

the motion before the court is whether the allegations of the complaint satisfy Rule 12(b)(6) not a summary judgment motion. Plaintiff's allegations are sufficient to state a claim for violation of her right to procedural due process. As explained above, the right to be heard must be provided at a "meaningful time and in a meaningful manner." *Zummerman Brush Co.*, 455 U.S. at 540. Here, plaintiff submitted multiple requests to have her hearing continued in order to allow her attorney an opportunity to review the case and be prepared for the hearing. Despite what on its face appears to be a reasonable request, defendants refused to continue the hearings so that plaintiff could be meaningfully represented by her counsel at a hearing for which he was prepared.

While defendants ultimately did meet with plaintiff just hours prior to her termination, the court cannot find from the complaint that the meeting constituted a reasonable opportunity to be heard. First, plaintiff's allegations show that notice of the hearing was sent to counsel minutes before the end of the business day immediately preceding the date of the hearing. Second, plaintiff alleges that defendants failed to listen to the "Totality of the Circumstances." This coupled with the alleged repeated denials of the request to postpone the hearing so that plaintiff's counsel could prepare and participate are sufficient to permit the inference that defendants failed to afford plaintiff a meaningful opportunity to be heard on the decision to terminate her employment.

Defendants also contend that they are entitled to qualified immunity on plaintiff's claim(s) for violation of the Fourteenth Amendment. ECF No. 41 at 12. "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Resolving the defense of qualified immunity involves a two-step process: the court must decide 1) whether the plaintiff has alleged or shown a violation of a constitutional right; and 2) whether the right at issue was clearly established at the time of defendant's alleged misconduct. *Pearson*, 555 U.S. at 232 (citing *Saucier v. Katz*, 533 U.S. 194, 201–202 (2001)).

"Qualified immunity is applicable unless the official's conduct violated a clearly established constitutional right." *Pearson*, 555 U.S. at 232. To be "clearly established" "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). "This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in light of pre-existing law the unlawfulness must be apparent." *Id*.

Defendants' assertion of qualified immunity is based on their contention that they "followed applicable current law" and the procedures approved in the MOU between the County and plaintiff's labor representatives. *See* ECF No. 41 at 12. Significantly, however, defendants do not dispute that it was clearly established that plaintiff was entitled to notice of the disciplinary charges and a meaningful opportunity to be heard. *See Zummerman Brush Co.*, 455 U.S. at 540. Rather, the dispute here centers on whether there were adequate reasons to refuse repeated requests to schedule the termination hearing to a date on which plaintiff's counsel could both attend and be prepared to proceed. As just explained, plaintiff has alleged sufficient facts demonstrating that she was denied her established rights to a meaningful opportunity to be heard. Accordingly, defendants are not entitled to qualified immunity on the basis of the current record.

### 3. Title VII of the Civil Rights Act

Plaintiff's third and fourth claims for relief are entitled "Retaliation Termination" and "Harassment." ECF No. 39 at 15-18, 38-46. As far as the court can discern, plaintiff appears to claim that her employment was terminated in violation of Title VII of the Civil Rights Act.[4] Defendants argue that any claim brought for violation of Title VII must be dismissed because plaintiff failed to timely file a charge with Equal Employment Opportunity Commission. ECF No. 41 at 13.

/////

---

[4] Again, the precise claim plaintiff intends to allege is not entirely clear. Within these causes of action plaintiff makes reference to the Procedural Due Process Clause of the Fourteenth Amendment and § 1983. *See* ECF No. 39 at 15-18, 38-46.

11

1       Under Title VII, a plaintiff must exhaust her administrative remedies by filing a timely
2  charge with the EEOC, or the appropriate state agency, thereby affording the agency an
3  opportunity to investigate the charge. *B.K.B. v. Maui Police Dep't*, 276 F.3d 1091, 1099 (9th Cir.
4  2002) (citing 42 U.S.C. § 2000e–5(b)). "The administrative charge requirement serves the
5  important purposes of giving the charged party notice of the claim and 'narrow[ing] the issues for
6  prompt adjudication and decision.'" *Id*. (quoting *Park v. Howard Univ.*, 71 F.3d 904, 907 (D.C.
7  Cir. 1995) and *Laffey v. N.W. Airlines, Inc.*, 567 F.2d 429, 472 n. 325 (D.C. Cir. 1976)). To
8  timely exhaust administrative remedies, a plaintiff must file a charge with the EEOC within 180
9  days after the unlawful employment practice. 42 U.S.C. 2000e-5(e)(1). The time "is extended to
10 300 days if the plaintiff first institutes proceedings with a 'State or local agency with authority to
11 grant or seek relief from such practice.'" *MacDonald v. Grace Church Seattle*, 457 F.3d 1079,
12 1082 (9th Cir. 2006) (quoting 42 U.S.C. 2000e-5(e)(1)). "A claim is time barred if it is not filed
13 within these time limits." *Nat'l R.R. Passenger Corp. v. Morgan*, 436 U.S. 101, 109 (2002).
14      "The time period for filing a complaint of discrimination begins to run when the facts that
15 would support a charge of discrimination would have been apparent to a similarly situated person
16 with a reasonably prudent regard for his rights." *Boyd v. U.S. Postal Service*, 752 F.2d 410, 414
17 (9th Cir. 1985). "The proper focus is upon the time of the discriminatory acts, not upon the time
18 at which the consequences of the discriminatory act became most painful." *Abramson v.*
19 *University of Hawaii*, 594 F.2d 202, 209 (9th Cir. 1979).
20      Plaintiff's retaliation claim is based upon the termination of her employment, ECF No. 39
21 at 15-16, and her harassment claim is predicated on conduct occurring prior to the date her
22 termination became final, *id*. at 17-18. Accordingly, plaintiff's Title VII claims began to run no
23 later than July 6, 2011, the date of her termination.
24      Plaintiff alleges that on April 26, 2012, she filed a complaint with the Equal Employment
25 Opportunity Commission. ECF No. 39 ¶ 34. She was required to do so within 180 days.
26 Although plaintiff did file her charge with the EEOC within 300 days of her termination, she was
27 not entitled to the longer, 300 day limitation period. Her subsequent complaint submitted to the
28 California Department of Fair Employment and Housing Authority ("DFEH") was filed on July

1   6, 2012. *Id*. at ¶ 35.   Because she did not file her claim with the DFEH until after she filed her

2   charge with the EEOC she was required to file the EEOC charge within 180 days. *See*

3   *MacDonald*, 457 F.3d at 1082 ("[T]he limitation period is extended to 300 days *if the plaintiff*

4   *first institutes proceedings with* [the DFEH]") (emphasis added).

5   Plaintiff appears to argue that her Title VII claims are not untimely because she initiated

6   this action within 90 days of receiving the EEOC right-to-sue letter, which was issued on

7   February 25, 2013.   ECF No. 45 at 3-4.   Receipt of a right-to-sue letter does not establish

8   exhaustion of administrative remedies.   To exhaust administrative remedies, a party must (1) file

9   a timely charge and (2) act upon a notice of right to sue. *Myers-Desco v. Lowe's HIW, Inc.*, 484

10  Fed. Appx. 169, 171 (9th Cir. 2012) (citing *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 47

11  (1974).   Plaintiff's charge was not timely filed and therefore her Title VII claims are barred.

12       4. Civil Conspiracy

13  Plaintiff's seventh cause of action is entitled "Civil Conspiracy."   ECF No. 39 at 19-20.

14  As is the case with many of plaintiff's claims, it is difficult to decipher the precise claim plaintiff

15  intends to assert.   Although the claim is entitled "Civil Conspiracy," plaintiff makes reference to

16  the Equal Protection and Due Processes Clauses of the Fourteenth Amendment and lists a number

17  of state court cases. *Id*. at 19.   To the extent plaintiff intends to assert a state law claim, the claim,

18  as discussed in greater detail below, is barred for failure to timely submit a government claim

19  with the County of Nevada.   To the extent plaintiff intended to assert a conspiracy claim under 42

20  U.S.C. § 1985(3), plaintiff has failed to allege sufficient facts in support of this claim.

21  Section 1985(3) creates a civil action for damages caused by two or more persons who

22  "conspire . . . for the purpose of depriving" the injured person of "the equal protection of the

23  laws, or of equal privileges and immunities under the laws" and take or cause to be taken "any act

24  in furtherance of the object of such conspiracy."   42 U.S.C. § 1985(3).   The elements of a §

25  1985(3) claim are: (1) the existence of a conspiracy to deprive the plaintiff of the equal protection

26  of the laws; (2) an act in furtherance of the conspiracy; and (3) a resulting injury. *Addisu v. Fred*

27  *Meyer, Inc.*, 198 F.3d 1130, 1141 (9th Cir. 2000) (citing *Scott v. Ross*, 140 F.3d 1275, 1284 (9th

28  Cir. 1998)).   The first element requires that there be some racial or otherwise class-based

"invidious discriminatory animus" for the conspiracy. *Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 268–69 (1993); *Trerice v. Pedersen*, 769 F.2d 1398, 1402 (9th Cir.1985).

Plaintiff's amended complaint does not contain any allegations regarding racial or class-based invidious discrimination. Accordingly, to the extent plaintiff intended to allege a claim under section 1985(3), the claim fails.

5. State Law Claims

Plaintiff also purports to assert several state law claims. In addition to possible state law claims discussed above, plaintiff's fifth and sixth causes of action, "Preventing Subsequent Employment by Misrepresentation" and intentional infliction of emotion distress, are allege violations of California law. ECF No. 39 at 18-19. Defendants argue that all of plaintiff's state law claims must be dismissed because plaintiff failed to present the County of Nevada with a timely government claim. ECF No. 41 at 14-15.

The Government Claims Act ("GCA") requires that a party seeking to recover money damages from a public entity or its employees submit a claim to the entity before filing suit in court, generally no later than six months after the cause of action accrues. Cal. Gov't Code §§ 905, 911.2, 945, 950.2. Timely claim presentation is not merely a procedural requirement of the GCA but is an element of a plaintiff's cause of action. *Shirk v. Vista Unified Sch. Dist.*, 42 Cal. 4th 201, 209 (2007). Thus, when a plaintiff asserts a claim subject to the GCA, he must affirmatively allege compliance with the claim presentation procedure, or circumstances excusing such compliance, in his complaint. *Id*. The requirement that a plaintiff asserting claims subject to the GCA must affirmatively allege compliance with the claims filing requirement applies in federal court as well. *Karim–Panahi v. Los Angeles Police Dep't*, 839 F.2d 621, 627 (9th Cir. 1988).

Here, plaintiff alleges that she presented the County of Nevada with a Notice of Claim on April 2, 2013. ECF No. 39 ¶ 42, Ex. P. The claim was submitted to the county's Risk Management Committee on May 6, 2013, and subsequently rejected. *Id*. at ¶ 43. All of plaintiff's claims relate to the termination of her employment and therefore each accrued on or before July 6, 2011, the date her termination became final. Thus, plaintiff waited nearly two

years after the accrual of her claims to provide the County of Nevada with notice.  Plaintiff's state law claims must be dismissed because she failed to timely submit her claims to the County of Nevada.  *See* Cal. Gov't Code § 911.2 (A claim relating to a cause of action for death or injury must be submitted not later than six months after the accrual of the cause of action.  Any claim for any other cause of action shall be presented within one year of its accrual).  Because plaintiff cannot assert her state law claims against the county, her state law claims against defendants, who are both county employees and were acting within the scope of their employment, are also barred.  Thus, all of plaintiff's state law claims must be dismissed.

III.    Conclusion

Accordingly, it is hereby RECOMMENDED that:

1. Defendants' motion to dismiss plaintiff's first amended complaint, ECF No. 40, be granted as follows:

   a. Plaintiff's first ("Intrusion Into Seclusion (Privacy) Under Equal Protection") and seventh ("Civil Conspiracy") causes of action be dismissed with leave to amend;

   b. Plaintiff's third ("Retaliation Termination") and Fourth ("Harassment in violation of Title VII") causes of action be dismissed with prejudice and without leave to amend;

   c. Plaintiff's state law claims be dismissed with prejudice and without leave to amend.

2. Defendants' motion to dismiss plaintiff's due process claim be denied.

3. Plaintiff be granted thirty days from the date of service of any order adopting these findings and recommendation to file a second amended compliant as provided herein.  The second amended complaint must bear the docket number assigned to this case and must be labeled "Second Amended Complaint."  Should plaintiff fail to timely file a second amended complaint, this action shall proceed on plaintiff's due process claim.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned

1  "Objections to Magistrate Judge's Findings and Recommendations."  Failure to file objections
2  within the specified time may waive the right to appeal the District Court's order.  *Turner v.*
3  *Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).
4  DATED:  March 3, 2015.

_____
EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE